UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEANNE DIMENT and EARL FAMANAS, et al., | ) ) ) |
| Plaintiffs, | ) Case No. 1:23-cv-01173 ) ) Judge Sharon Johnson Coleman |
| v. | ) ) |
| QUAD/GRAPHICS, INC. and RISE INTERACTIVE MEDIA & ANALYTICS, LLC, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

On March 24, 2023, Plaintiffs Leanne Diment and Earl Famanas, on behalf of themselves and all similarly situated current and former employees, sued Defendants Quad/Graphics, Inc. ("Quad") and Rise Interactive Media & Analytics, LLC ("Rise"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(d)(4)(A) and (B). Plaintiffs allege that Defendants' health insurance program requires employees to undergo a medical examination or else incur additional fees. Plaintiffs contend that this regime violates the ADA because it constitutes a non-voluntary examination. On April 25, 2023, Defendants moved under 28 U.S.C. § 1404(a) to change venue to the U.S. District Court for the Eastern District of Wisconsin (the "Eastern District"). For the reasons stated below, the Court denies Defendants' motion [17].

**Background**

Diment and Famanas are residents of Chicago, Illinois. Quad is a Delaware corporation with its principal place of business in Sussex, Wisconsin. Rise is a wholly-owned subsidiary of Quad, with its principal place of business in Chicago, Illinois. Plaintiffs are Rise employees and work in Chicago.

1

Defendants provide employees with an employee-sponsored health insurance plan. While Plaintiffs are employees of Rise, Quad administers the health insurance program. This plan includes an optional wellness program (the "Wellness Plan"). To participate in the Wellness Plan, employees must undergo biometric screening for issues like high blood pressure and cholesterol. Defendants maintain that the Wellness Plan is sponsored, designed, and administrated from Quad's Sussex office, and all of the employees primarily responsible for the Wellness Plan work from that area.

On October 21, 2021, a Senior Vice-President in Rise's Chicago office sent an email to all employees in the Chicago office. The message included information about Quad's employee benefits and health insurance policies. An email attachment explained that an employee's health insurance premium will depend on whether they participate in a biometric screening, which the email describes as "a series of tests that check your blood pressure, cholesterol (HDL and LDL, blood sugar, body mass index and for cotinine (cotinine is a byproduct of tobacco use)." Dkt. 9 at ¶ 54.

Plaintiffs also received a "Notice Regarding Wellness Program," explaining that "[a]dditional incentives for medical plan participants of up to $250 may be available for employees and spouses who achieve certain health outcomes by completing a biometric, meeting with a Wellness Coach and completing a Well-being Activity." *Id.* at ¶ 56. Rise employees also notified Plaintiffs via email that "[t]o maintain eligibility for either of Quad's medical plans," employees must complete a biometric screening every other year. *Id.* at ¶ 57. Plaintiffs did not participate in a biometric screening. Plaintiffs allege that they incurred higher health insurance premiums as a result of their non-participation.

Plaintiffs bring this suit on behalf of themselves and other employees who participated in the Wellness Program since August 28, 2021. As of December 1, 2022, 8,511 employees were eligible to participate in Quad's Wellness Program. 4,077 of those employees work in Wisconsin and 617 work

2

in Illinois, and Defendants explain that 56% of those Illinois employees work in the Southern District of Illinois.

**Legal Standard**

Under 28 U.S.C. § 1404(a), courts may transfer an action to a more convenient district. District courts have discretion in evaluating motions to transfer after considering, on a case-by-case basis, convenience and fairness. *See Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010). A transfer is appropriate if: (1) venue is proper in both the transferor and transferee court; (2) transfer serves the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *AL & PO Corp. v. Am. Healthcare Cap., Inc.*, No. 14 C 1905, 2015 WL 738694, at *2 (N.D. Ill. Feb. 19, 2015) (Pallmeyer, J.) (citing *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1167 (N.D. Ill.1995) (Bucklo, J.)). The moving party bears the burden of demonstrating that a transfer is warranted. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir.1989).

**Discussion**

The parties agree that venue is proper in both the transferor and transferee courts. Thus, the Court considers only whether the transfer (1) is convenient and (2) in the interest of justice. The Court addresses each issue in turn.

**A. Convenience:**

When evaluating the relative convenience of the transferee and the transferor courts, the court weighs (a) the plaintiff's choice of forum; (b) the situs of material events; (c) the relative ease of access to sources of proof; (d) the convenience of the parties; and (e) the convenience of witnesses. *AL & PO Corp.*, 2015 WL 738694, at *2. Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer. *Id.* "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should

rarely be disturbed" on the basis of convenience. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003).

### (a) The Plaintiff's Choice of Forum

While not absolute, a plaintiff's choice of forum is given substantial deference when considering transfer, especially where, as here, the chosen forum is plaintiff's home forum. *A.M. Castle & Co. v. Byrne*, No. 13-CV-4835, 2013 WL 5511673, at *2 (N.D. Ill. Oct. 3, 2013) (Coleman, J.); *Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir. 1982). Numerous courts within this District discount that deference in a putative nationwide class action. *See AL & PO Corp.*, 2015 WL 738694, at *2 (listing class action cases in this District in which courts discounted a plaintiff's deference); *but see id*; *O'Connor v. RealPage Inc.*, No. 21 C 6846, 2022 WL 1487374, at *2 (N.D. Ill. May 11, 2022) (Kennelly, J.) (retaining deference despite the class status). Those courts reason that any class member who subsequently chooses to appear might be inconvenienced. *Id.*

The Court is not inclined to discount Plaintiffs' deference in this case. First, the Seventh Circuit has not endorsed such an approach, and the Court is reluctant, especially without class certification briefing, to look beyond the putative stage. *See AL & PO Corp.*, 2015 WL 738694, at *3. Further, this putative class is predominantly geographically constrained to Illinois and Wisconsin, significantly limiting any potential travel inconveniences. The class's size is also relatively discrete, comprising only those employees who were eligible for Quad's Wellness Program. In contrast, many other class actions involve "all individuals or entities in the United States who received one or more unsolicited facsimile advertisements from or on behalf of Defendant." *See, e.g.*, *id.* at *1. Thus, the ordinary rationales for discounting a plaintiff's deference are less persuasive in this case.

Second, as the Court will discuss more below, if the case receives class certification it is unlikely that any unnamed members will actually be called upon to meaningfully participate in the

4

litigation. See *RealPage, Inc.*, 2022 WL 1487374, at *2 (finding the extent of unnamed plaintiffs' involvement relevant to the deference assessment). Finally, unnamed class members "presumably benefit from a class representative who is able to aggressively litigate their claims without significant inconvenience due to travel." *AL & PO Corp.*, 2015 WL 738694, at *3. Thus, the Court does not disturb Plaintiffs' substantial forum deference.

### (b) Situs of Material Events

The Court next considers the situs of the material events giving rise to the dispute, examining whether the suit bears a significant relationship to this District. *A.M. Castle & Co.*, 2013 WL 5511673, at *3. The "injury and the decision-making are both material events." *See AL & PO Corp.*, 2015 WL 738694, at *3; *Sojka v. DirectBuy, Inc.*, No. 12-cv-9809, 2014 WL 1089072, at *2 (N.D. Ill. Mar. 18 2014) (Feinerman, J.) (finding the situs of material events factor neutral in a TCPA case where the decisions were made in one state but the messages were received in another). Here, like in *Sojka*, Plaintiffs work in Rise's Chicago office and Plaintiffs received email communications about the Wellness Program from Chicago employees, but Quad made decisions about the plan in Wisconsin. Thus, the Court finds the situs of the material events to be a neutral factor.

Defendants' reliance on *RAH Color Technologies, LLC v. Quad/Quad Graphics, Inc.*, is misguided. No. 17 C 4931, 2018 WL 439210 (N.D. Ill. Jan. 16, 2018) (St. Eve, J.) Indeed, that dispute involved an allegedly-infringing software that the defendants used in a "significant number" of its Wisconsin production facilities. *See id.* at *4 (enumerating five production facilities in the Eastern District of Wisconsin). The Court finds little reason to extend that fact-intensive, patent dispute reasoning to this case as this dispute is unlikely to raise similar fact-specific questions. Thus, the Court finds that the situs factor is neutral.

### (c) Relative Ease of Access to Sources of Proof

5

The Court finds the relative ease of access to sources of proof factor neutral. The dispute centers on health plan files and related documents, all of which are electronically transmittable, and neither party identifies evidence that requires physical inspection. *See Judge v. Unigroup, Inc.*, No. 16 CV 6884, 2017 WL 345561, at *3 (N.D. Ill. Jan. 24, 2017) (Coleman, J.) ("Where . . . the evidence is easily transferable from one district to another electronically . . . the factor of ease of access to proof is neutral.").

### (d) Convenience of the Parties

The Court concludes that the parties' convenience factor favors the Plaintiffs. Both Plaintiffs and Defendant Rise—three of the four parties—reside in this District. Further, as Rise's parent company, Quad presumably visits the District at least occasionally; Defendants do not allege that either Plaintiff has similar ties to the Eastern District. All parties are represented by counsel who can litigate this matter in either location. It is well-settled that "[i]n our age of advanced electronic communication, including high-quality videoconferencing, changes of venue motivated by concerns with travel should be fewer than in the past." *In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013). The venues impose largely comparable burdens, and thus the Court weighs this factor in favor of Plaintiffs. *In re Natl'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003) ("When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff.").

### (e) Convenience of the Witnesses

The witnesses' convenience factor is often a "prime" factor in determining whether to grant a motion to transfer." *See* AL *& PO Corp.*, 2015 WL 738694, at *4. The Court finds Plaintiffs' characterization of this dispute persuasive, informing the weight to which the Court gives this factor. Plaintiffs assert that "[t]he crux of the dispute between the Parties is whether Defendants may claim

6

a narrow exception to the ADA's general prohibition on compelled medical examinations for the "voluntary" participation. Thus, much of the dispute will turn on legal arguments over the meaning of that word, rather than any substantial disagreement regarding the facts of how the program has been implemented. Defendants do not address that characterization. They instead stress that the individuals who designed and administered the plan (ostensibly relevant witnesses) reside in Wisconsin. While that may be true, if the Court ultimately finds that that this case raises solely—or largely—legal issues, it will only need to rely on a handful, if any, factual witnesses.

Defendants are correct that essentially all of the Plan's relevant designers and administrators reside in Wisconsin. However, the Court gives less weight to the convenience of Defendants' own employees. *See AL & PO Corp.*, 2015 WL 738694, at *4. Aside from Defendants' actuarial firm, neither Party identifies any third-party witnesses, either in this District or Wisconsin. In the event that the Parties ultimately require such witnesses, the Court is convinced that the short distance between the two venues will reduce any inconveniences. Thus, under these circumstances, this factor is largely neutral.

Because the Court substantially defers to Plaintiffs' forum choice and because none of the remaining factors meaningfully move the needle in Defendants' favor, the Court finds that the convenience prong, points in Plaintiffs' favor.

### B. Interest of Justice

The court must also examine the interest of justice. "The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Rsch. Automation, Inc.*, 626 F.3d at 978. This element "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.* The relevant interest of justice factors include "(1) the speed at which the case will proceed to trial; (2) the courts' familiarity with the applicable law; and (3) the relation of the community to the

occurrence at issue and the desirability of resolving controversies in each court's locale." *AL & PO Corp.*, 2015 WL 738694, at *5. The Parties agree that both courts are equally familiar with the underlying law, so the Court addresses the remaining factors in turn.

### (a) Speed to Trial

To evaluate the speed at which a case will proceed, courts look to two statistics: "(1) the median number of months from filing to disposition for civil cases and (2) the median number of months from filing to trial for civil cases." *Juarez v. Nat'l Ry. Passenger Corp.*, No. 06-cv-3681, 2007 WL 2713357, at *3–4 (N.D. Ill. Sept. 12, 2007) (Darrah, J.).

The Parties agree that, on average, cases proceed to trial seven months faster in Wisconsin's Eastern District than in this District. The Parties also agree that courts in this District dispose of cases, on average, two months faster than in Wisconsin's Eastern District. Because it is unclear whether this matter will actually go to trial, the Court finds this factor neutral. *See Tingstol Co. v. Rainbow Sales, Inc.*, 18 F. Supp. 2d 930, 934–35 (N.D. Ill. 1998) (Alesia, J.) (finding that while the parties may receive a trial in the requested transferor court sooner, they were more likely to receive a quicker disposition in the court where the action was filed, making the factor neutral.)

### (b) Community's Relationship to the Controversy

Finally, both sides disagree as to which district has a stronger relationship to the litigation. Defendant argues that the Eastern District of Wisconsin has the strongest relationship to this litigation because 47.9% of putative class members work in Wisconsin whereas only 4% of putative class members reside in the Northern District of Illinois. Plaintiff notes, however, that the lawsuit suit arises out of injuries the Named Plaintiffs suffered as a result of their employment in Illinois. Plaintiff argues this Court has a greater interest in resolving the dispute between the Named Plaintiffs, who are Chicago residents, their employer, who is headquartered in Chicago, and their employer's parent, who is headquartered in Wisconsin. Despite the high number of out of state

employees, the Court cannot ignore that Plaintiffs and their families reside in this District at this pre-certification stage. Even if a class were ultimately certified, the situs of the material is at least partly in Chicago. Thus, the Court finds this factor neutral.

**Conclusion**

Finding the convenience factor weighing in Plaintiffs' favor and the interest of justice factor neutral, the Court denies Defendants' motion to change venue.

**IT IS SO ORDERED.**

Date: 1/10/2024      Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge