UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEANNE DIMENT and<br>EARL FAMANAS, et al.,<br><br>             Plaintiffs,<br><br>             v.<br><br>QUAD/GRAPHICS, INC. and RISE<br>INTERACTIVE MEDIA & ANALYTICS,<br>LLC,<br><br>             Defendants. | )<br>)<br>)  Case No. 1:23-cv-1173<br>)<br>)<br>)  Judge Sharon Johnson Coleman<br>)<br>)<br>)  Magistrate Judge Gabriel A. Fuentes<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Leanne Diment and Earl Famanas ("Plaintiffs") on behalf of themselves and all others similarly situated filed an amended complaint [9] against Defendants Quad/Graphics, Inc. ("Quad) and Rise Interactive Media & Analytics, LLC ("Rise") (collectively "Defendants"), alleging a violation of the Americans with Disabilities Act ("ADA"). Defendants motion to dismiss [30] the first amended class complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons outlined below, Defendants' motion to dismiss is denied.

**Background**

Quad is a marketing company based in Sussex, Wisconsin. Rise is a wholly owned, Chicago-based subsidiary of Quad. Plaintiffs Leanne Diment and Earl Famanas are employees of Rise and Quad, who each participate or used to participate, respectively, in Quad's medical plan.

Quad allows employees who participate in its employer-sponsored medical plan—including Plaintiffs—the choice to participate in an optional "Wellness Program." The Wellness Program screening option offers a discount on premiums for employees who choose to complete the

1

biometric screening and then test within certain standards across key criteria, including blood sugar, blood pressure, LDL Cholesterol, Triglycerides/HDL and BMI.

When Plaintiffs joined the Quad medical plan in 2022, they initially paid insurance premiums at the level(s) offered to employees who complete a biometric screening and satisfy all criteria—i.e., the lowest-adjusted premiums available under the wellness program. This grace period was intended to allow sufficient time to opt into the wellness program (for anyone who elected to do so), after which the premiums would be adjusted to reflect whether an employee chose to complete the biometric screening and, if so, their results.

Plaintiffs chose not to participate in the biometric screening. In turn, Plaintiffs' medical-plan premium payments were adjusted in May 2022, reverting to the baseline premiums for their plans, without any incentive discounts under the wellness program. For Ms. Diment, who was enrolled in family coverage in the Core PPO plan, her weekly premium changed from $83.56 to $118.37—a difference of $34.81 per week. For Mr. Famanas, who was enrolled in single coverage in the HDHP plan, his weekly premium changed from $15.11 to $48.97—a difference of $33.86 per week.

In June 2022, Ms. Diment filed a charge of discrimination with the EEOC alleging that Quad's wellness program violated the ADA. Ms. Diment filed this action on February 24, 2023. alleging that Quad's wellness program violates the statute's general rule prohibiting employer-based "medical examination[s]" and "inquiries." 42 U.S.C. § 12112(d)(4)(A).

**Legal Standard**

When considering a Rule 12(b)(6) motion, the court accepts all of the plaintiff's allegations as true and views them "in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plaintiff does not need to plead particularized facts, but the allegations in the complaint

2

must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

**Analysis**

Under the ADA, "a covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). An exception exists under (B), which states, "a covered entity may conduct *voluntary* medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions." *Id.* at (B). Here, it is undisputed that the biometric screening constitutes a medical examination.

The core of the parties' dispute surrounds whether Plaintiffs sufficiently allege that the medical examinations were voluntary. Plaintiffs argue that the monthly charges imposed due to the failure to complete the medical examinations were significant penalties, and thus, coercive to cause employees to complete the medical examinations. Plaintiffs further allege that the coercion forcing employees to undergo the medical examinations renders the medical examinations involuntary. Defendants claim that the charges Plaintiffs' claim are coercive are original costs of the premium. Employees who choose to undergo the medical examinations merely receive a premium discount. Therefore, Defendants claims they are incentivizing employees to complete the medical examination rather than punishing employees who fail to do so. In other words, Plaintiffs have the choice to

decide whether complete the medical examination and received a discount or to forego their medical examination and pay the regular rate of the premium.

The ADA does not include a definition of what voluntary means in the context of the act. Both the Plaintiffs and Defendants rely on EEOC regulatory guidance and out of district case law in making their case. However, this Court is persuaded by a recent decision made by a judge in this district. In *Williams v. City of Chicago,* 616 F.Supp.3d 808, 817 (N.D. Ill. 2022) (Kendall, J.), the Court evaluated similar arguments raised by different parties' regarding whether a wellness program was voluntary under the ADA. The Court held that "the issue of whether the Wellness Program is voluntary is a question of fact." *Id.* ("Taking these allegations as true and making all reasonable inferences in favor of Plaintiffs, as the Court must at this stage, Plaintiffs have sufficiently alleged that the Program was not voluntary. The factual question of whether the Wellness Program is voluntary is not ripe to decide in a 12(b)(6) motion.") This Court agrees and similarly finds that the Plaintiffs have sufficiently alleged that the program was not voluntary. Accordingly, Defendant's motion to dismiss must be denied.

**Conclusion**

Based on the foregoing, Defendants' motion to dismiss Plaintiffs' first amended class action complaint [30] is denied.

IT IS SO ORDERED.

Date: 6/11/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge